1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                      **SAN FRANCISCO DIVISION**

11

12  YOLANDA BUMATAY MULATO,              Case No. 14-cv-00884 NC

13              Plaintiff,               **ORDER DENYING PLAINTIFF'S**
                                         **MOTION FOR LEAVE TO AMEND**
14         v.                            **COMPLAINT; GRANTING THE**
                                         **INDIVIDUAL DEFENDANTS'**
15  WELLS FARGO BANK, N.A., WELLS        **MOTION TO DISMISS;**
    FARGO HOME MORTGAGE, a division of   **GRANTING IN PART WELLS**
16  WELLS FARGO BANK, N.A., CORY         **FARGO'S MOTION TO DISMISS;**
    MOELLER, ANGELA NAIL, LANA           **DENYING PLAINTIFF'S MOTION**
17  KRAHN, AND KAREN LEE, employees      **FOR PRELIMINARY**
    and agents of WELLS FARGO HOME       **INJUNCTION; DENYING WELLS**
18  MORTGAGE ("WELLS FARGO"),            **FARGO'S MOTION FOR**
                                         **SANCTIONS; and DENYING**
19              Defendants.              **PLAINTIFF'S COUNTER MOTION**
                                         **FOR SANCTIONS**
20
                                         **Re: Dkt. Nos. 28, 40, 42, 59, 63, 71,**
21                                       **75, 78, 85**

22        Plaintiff Yolanda Bumatay Mulato brings this action against Wells Fargo Bank and

23  four of its employees arising out of the denial of her application for a loan modification.

24  Wells Fargo moves to dismiss the complaint for failure to state a claim under Federal Rule

25  of Civil Procedure 12(b)(6).  The employee defendants move to dismiss the case against

26  them under Rule 12(b)(2) for lack of personal jurisdiction.  Also pending before the Court

27  are Mulato's motion for preliminary injunction, her motion for leave to amend the

28  complaint, and cross-motions for sanctions.

# I. BACKGROUND

## A.    The Allegations of the Operative Complaint

In analyzing claims under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all material facts alleged in the complaint are true. *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010). The operative, first amended complaint alleges that, around June 2000, Mulato purchased a single-family home located at 94 Rae Avenue, San Francisco, California ("the Rae property") for around $500,000. Dkt. No. 27 ¶ 29. In June 2006, Mulato applied for a refinancing loan from World Savings Bank, FSB. *Id.* ¶ 30. The complaint alleges that World Savings was renamed Wachovia Mortgage, FSB on January 1, 2008; Wachovia Mortgage, FSB changed its name to Wells Fargo Bank Southwest, N.A. on November 2009; and then merged with Wells Fargo. *Id.* n.2.

At the time she applied for the refinancing loan, Mulato was earning a gross annual income of approximately $187,000 as chief operating room nurse at San Mateo County general hospital, operating room nurse at Kaiser Hospital and collecting pension benefits from San Francisco County General Hospital where she had worked 25 years. *Id.* ¶ 30. The refinancing loan was for $551,000, bearing interest at an adjustable rate of 6.510%, and secured by a deed of trust. *Id.* The complaint alleges that "[f]rom origination of the subject loan in 2000, through the June 19, 2006 refinancing to filing the instant action, plaintiff timely made each and every loan contract payment, each instalment [sic] of taxes and each real property insurance premium." *Id.*

After her retirement in 2013, Mulato experienced financial distress as a result of declining monthly income and rising monthly expenses. *Id.* ¶¶ 33-36. Mulato alleges that her "finances put her in jeopardy of imminent default under the increased monthly Rae Avenue mortgage payment, decreasing social security benefits, increasing social security premium, tax obligations for artificial debt forgiveness income in 2012 and increased quarterly tax payments." *Id.* ¶ 37. As a result, she "is spending more than she earns on monthly obligations including the loan payment on Rae." *Id.* ¶ 36.

In light of this financial hardship, Mulato sought loan modification to reduce her monthly loan payment on Rae from approximately $3,356 to $2,400. *Id.* ¶ 37. Mulato retained an attorney to assist her in obtaining a permanent loan modification. *Id.* ¶ 39. On June 13, 2013, Mulato's counsel wrote Wells Fargo requesting mortgage assistance on her behalf. *Id.* ¶¶ 38-39. On July 1, Wells Fargo's Home Preservation Specialist Cory Moeller acknowledged receipt of the request for mortgage assistance and sent Mulato a package of forms. *Id.* ¶¶ 40-41. On July 23, Mulato submitted the completed application with responsive documentation to Wells Fargo. *Id.* ¶ 41. Moeller acknowledged receipt of the application. *Id.*

The complaint alleges that on July 18, 2013, "Moeller wrote plaintiff a letter on behalf of Wells Fargo which from its plain meaning stated a promise or agreement to consider plaintiff's eligibility for 'mortgage assistance' (i.e., 'loan modification')":

> Now that we've received your documents (applying for mortgage assistance), *our home preservation team will carefully review what you've submitted to determine if you are eligible for mortgage assistance.* We'll follow up with you again soon to outline the next steps in the process and address any additional documents that might be needed to complete our review. *After we ensure that we have all the documents we need, we will review and validate those materials to determine if you're eligible for a loan modification. ... If you are eligible and your modification does not require a trial period plan, you will receive a final loan modification agreement adjusting the terms of your mortgage....*

*Id.* ¶ 41 (emphasis in the complaint). Mulato contends that the latter statement in italics is significant because it "confirms that plaintiff was promised a permanent loan modification." *Id.* ¶ 42.

"In order to get a clear statement of the modification terms" Mulato's counsel and Moeller had a telephone conference on August 7, 2013. *Id.* ¶ 42.[1] The complaint further alleges that "[i]n the phone conference specific terms of a permanent loan modification were discussed as a way to make plaintiff's monthly loan payment more affordable." *Id.*

---

[1] Some of the paragraphs in the first amended complaint contain duplicate numbering. This order refers to the number of the paragraph used in the first amended complaint, not to what the correct number should be.

Case No. 14-cv-00884 NC
ORDER ON MOTIONS

3

"Specifically, plaintiff's counsel and Moeller agreed that 'modification of the existing monthly principal and interest loan payment of $3,356 (on an outstanding principal balance of $572,500) could be modified by an interest rate reduction to 2%, amortized over 40-years, with monthly principle [sic], interest and impound payments of $2,400 per month." *Id.*  The complaint alleges that "Counsel confirmed the phone conference in a letter August 8, 2013, specifically 'request[ing] that (Moeller) comply with that representation and furnish [plaintiff] with a permanent loan modification agreement.'"  *Id.*  The complaint further alleges that, even though "[t]here was no indication that plaintiff's application was in any respect incomplete and there was no request for additional documentation," "neither plaintiff nor counsel received any response to plaintiff's August 8 letter confirming the specific modification terms being offered!"  *Id.*

On August 21, Moeller sent Mulato a letter acknowledging that he received the documentation she sent supporting her request for mortgage assistance.  *Id.* ¶ 44.  The complaint alleges that on August 28, Moeller sent Mulato "a completely contradictory letter" headed "**IMMEDIATE ATTENTION REQUIRED**" stating in part: "*I have not received all of the documentation previously requested*.  The deadline to return the remaining documents is being extended 15 days to September 12, 2013."  *Id.* (emphasis in complaint).  Mulato claims that this letter "evinces a fraud upon the loan modification process."  *Id.*

On September 4 and September 5, Moeller wrote Mulato that Wells Fargo has received, and will review, the documentation she sent.  *Id.* ¶¶ 45-46.  On September 18, 2013, Wells Fargo employee Angela Nail informed Mulato that Mulato's correspondence was referred to Nail for review and response, stating that Wells Fargo's records indicated Mulato spoke to Moeller on August 21, 2013, regarding documents that were still needed in order to complete the review for the modification.  *Id.* ¶ 47.  On September 20, Mulato's counsel wrote to Moeller that this statement was a misrepresentation.  *Id.* ¶ 48.

On September 24, 2013, Mulato received Moeller's "Decision on the federal government's Home Affordable Modification Program (HAMP)" ("the September 24

decision") that stated that he "carefully reviewed the information you sent us," and concluded that "[a]t this time, you do not meet the requirements of the Home Affordable Modification Program because: (x) *You have not documented a financial hardship that has reduced your income or increased your expenses*, thereby impacting your ability to pay your mortgage as agreed." *Id.* ¶ 50 (emphasis in complaint).  Mulato's counsel responded on September 25, insisting that Mulato had documented a financial hardship and urging Wells Fargo "to reconsider her request before she is required to exercise all available legal remedies." *Id.*  Mulato alleges that, on October 21, she received a letter from Moeller "purportedly mailed October 14, 2013," ("the October 14 decision") revising the September 24 decision. *Id.* ¶ 51.  The October 14 decision states in part "At this time, you do not meet the requirements of the program because: . . .  (x) Other: *You have the ability to pay your current mortgage payment using cash reserves or assets*" and goes on to state: "Please note: the information above is the primary reason that you are not eligible for mortgage assistance, however there may be other reasons related to the decision. . . ." *Id.* (emphasis in complaint).

On November 13, Mulato received a letter from Moeller stating that Mulato's "appeal request has been sent to our underwriting team for review." *Id.* ¶ 60.  On November 18, Mulato received a letter informing her that another Wells Fargo employee, Lana Krahn, "going forward, will be your new Wells Fargo Home Mortgage home preservation specialist." *Id.* ¶ 58.  On November 22, Mulato received a letter dated November 19, 2013, from Krahn "purportedly denying plaintiff's 'appeal.'" *Id.* ¶ 59.  On November 25, Krahn left a phone message with Mulato's counsel advising counsel to disregard her November 19 letter. *Id.*

**B.   Procedural History**

On February 27, 2014, Mulato filed her original complaint against Wells Fargo and four of its employees—Wells Fargo's Home Preservation Specialists Cory Moeller, Angela Nail, Lana Krahn, and Karen Lee ("employee defendants").  Dkt. No. 1.

On April 14, 2014, Mulato filed an ex parte motion for a temporary restraining order

seeking to enjoin Wells Fargo from foreclosing on the Rae property, after receiving a "Notice of Intent to Foreclose" on April 1.  Dkt. No. 6.  On April 30, 2014, the Court denied the ex parte motion for failure to show irreparable harm justifying the relief sought in light of the status of the foreclosure proceedings, and ordered Mulato to file a regularly noticed motion for a preliminary injunction.  *See* Dkt. No. 21.

On May 2, 2014, Wells Fargo filed a motion to dismiss all causes of action in the complaint for failure to state a claim.  Dkt. No. 24.  In lieu of opposing Wells Fargo's motion, Mulato filed her first amended complaint on May 12, 2014.  Dkt. No. 27.  On the same day, Mulato also filed a motion for preliminary injunction.  Dkt. No. 28.

In the first amended complaint, Mulato asserts ten causes of action against all defendants unless otherwise noted, labeled as: (1) "Breach of Contract" (against Wells Fargo only); (2) "Breach of the Implied Covenant of Good Faith and Fair Dealing"; (3) "Promissory Estoppel"; (4) "Negligent Misrepresentation"; (5) "Fraud"; (6) "Unfair Competition" (against Wells Fargo only); (7) "Violation of the Fair Debt Collection Practices Act ["FDCPA"]" (against Wells Fargo only); (8) "Violation of the Equal Credit Opportunity Act ["ECOA"]" (against Wells Fargo only); (9) "Violation of the Rosenthal Fair Debt Collection Practices Act" (against Wells Fargo only); and (10) "To Enjoin Wrongful Foreclosure against Wells Fargo for HBOR Violations."  *Id.*

Mulato claims that, as a result of defendants' conduct, she sustained damages "equal to the present value of the difference between the existing monthly principal and interest loan payment of $3,356 (on an outstanding principal balance of $572,500) at an adjusted interest rate of 4.5%, and the proposed modification loan payment at an interest rate of 2%, on the same principal balance amortized over 40-years with monthly principal, interest and impounds of $2,400 per month."  Dkt. No. 27 ¶ 61.  Mulato also alleges she was damaged by "the considerable time spent over an eight month period between June 2013 and February 2014, communicating with defendants preparing documents and furnishing information at their request."  *Id.* ¶ 62.  Mulato claims that she "could earlier have pursued refinancing from other financial institutions but later in 2013 lacked sufficient income to

1    qualify for any financing"; she "could also have considered other means of avoiding

2    foreclosure if she was denied the permanent loan modification (such as bankruptcy

3    restructuring, or selling or renting the entire home) though those alternatives were contrary

4    to her original plan"; and she "could have avoided having her credit reports further

5    damaged and losing Rae through foreclosure." *Id.* Mulato also seeks to restrain Wells

6    Fargo from, among other things, charging fees as result of late payments or her default,

7    recording a notice of default, or foreclosing on the Rae property. *Id.* at 64.

8         On May 29, 2014, Wells Fargo moved to dismiss the first amended complaint under

9    Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. No. 40. On the

10   same day, the employee defendants moved to dismiss all causes of action under Federal

11   Rule of Civil Procedure 12(b)(2) on the basis that this Court lacks personal jurisdiction over

12   them. Dkt. No. 42.

13        On August 30, 2014, Mulato filed an ex parte motion seeking "a stay" of defendants'

14   motions to dismiss "until the matter of plaintiff's motion for leave to amend and leave to

15   file a proposed first amended complaint has been resolved." Dkt. No. 71. The next day,

16   Mulato filed a motion for leave to amend the complaint and a proposed amended complaint

17   ("second amended complaint"). Dkt. No. 75. Both parties also filed motions for sanctions

18   related to the allegations of the first amended complaint. Dkt. Nos. 78, 85.

19        The Court has federal question jurisdiction over the FDCPA and ECOA claims under

20   28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. §

21   1367. *See* Dkt. No. 27 ¶¶ 3-6. All parties consented to the jurisdiction of a United States

22   Magistrate Judge under 28 U.S.C. § 636(c). Dkt. Nos. 16, 17, 20.

23   **C.    Requests for Judicial Notice**

24        As a preliminary matter, the Court addresses the parties' requests for judicial notice of

25   documents submitted in connection with the motion to dismiss. Wells Fargo filed a request

26   for judicial notice in support of its motion to dismiss, Dkt. No. 41, and an almost identical

27   request in connection with its opposition to Mulato's motion for preliminary injunction,

28   Dkt. No. 39. Mulato filed an objection to Wells Fargo's request for judicial notice related

Case No. 14-cv-00884 NC
ORDER ON MOTIONS                               7

to the motion to dismiss, agreeing that Exhibits 1 and 2 "may be noticed, but the remaining exhibits should not be noticed for the truth of the facts asserted therein." Dkt. No. 55 at 3. Mulato also filed a request for judicial notice asking that "the Court consider the Amended Complaint Dkt 27 in conjunction with plaintiff's opposition to Wells Fargo's Motion to Dismiss for Lack of Jurisdiction." Dkt. No. 54 at 1.

Generally, a court may not look to matters beyond the complaint without converting a motion to dismiss into one for summary judgment. *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010) (citations omitted). However, a court may take judicial notice of material that is submitted as part of the complaint, or is necessarily relied upon by the complaint, as well as matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), "a judicially noticed fact must be one not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned." *Datel Holdings*, 712 F. Supp. 2d at 983. A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

The Court will take judicial notice of the existence of Wells Fargo's Exhibits 1 through 11, Dkt. No. 41 under Federal Rule of Evidence 201(b). *See Fernandez v. Wells Fargo Bank, N.A.*, No. 12-cv-03941 NC, 2012 WL 5350256, at *2 (N.D. Cal. Oct. 29, 2012) (taking judicial notice of the same and similar documents). As to Mulato's request for judicial notice, it is denied as unnecessary given that the first amended complaint is part of the pleadings in this case, and is the very subject of defendants' motions to dismiss.

**D.   Mulato's Requests for Leave to File Supplemental Briefs**

On July 10, 2014, eight days after Wells Fargo filed a reply in support of its motion to dismiss, Mulato filed a "Request for Leave to File Supplementary Points and Authorities." Dkt. No. 59. Mulato asserts that "[t]he ground upon which the request is made is that this case presents an important question of first impression in this District and the Ninth Circuit,

1  and the Court should be fully briefed on the question." *Id.* The six-page brief does not

2  provide any facts or make any arguments that could not have been made in Mulato's

3  opposition.

4      On July 20, Mulato filed a second "Motion for Leave to File Supplemental Points and

5  Authorities Re HOLA Preemption." Dkt. No. 63. The motion is made on the ground that

6  "an important question is presented that the Ninth Circuit has not yet addressed" and that

7  "resolving Wells Fargo's Motion to Dismiss on the merits is the appropriate course of

8  action in light of the split within this District and other federal district courts." *Id.* Again,

9  the five-page supplemental brief does not provide any facts or make any arguments that

10  could not have been made in Mulato's opposition. The same is true for the arguments made

11  in the additional seven-page brief filed by Mulato on July 28 as a "reply" to Wells Fargo's

12  opposition to the request for leave. *See* Dkt. No. 68.

13      Mulato's requests to file supplemental briefs are procedurally improper and lack good

14  cause. These requests are not in compliance with any of the means authorized by the local

15  rules for presenting a written request to the Court for an order. *See* Civ. L.R. 7-1(a). The

16  Court disapproves of the practice of violating the local rules by filing tardy, piecemeal,

17  supplemental briefs without prior Court approval. *See* Civ. L.R. 7-3(d) (subject to two

18  exception which do not apply here, "[o]nce a reply is filed, no additional memoranda,

19  papers or letters may be filed without prior Court approval."). The Court admonishes

20  Mulato and her counsel that they must refrain from this practice. *See* Civ. L.R. 1-4

21  ("Failure by counsel or a party to comply with any duly promulgated local rule or any

22  Federal Rule may be a ground for imposition of any authorized sanction."). For the

23  purposes of the pending motions, however, the Court will consider the supplemental briefs

24  for completeness and because Wells Fargo has responded to the additional arguments made.

25  ## II. LEGAL STANDARD

26      A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

27  sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a

28  motion to dismiss, all allegations of material fact are taken as true and construed in the light

1   most favorable to the non-movant.  *Coal. For ICANN Transparency, Inc.*, 611 F.3d at 501.

2   The Court, however, need not accept as true "allegations that are merely conclusory,

3   unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*,

4   536 F.3d 1049, 1055 (9th Cir. 2008).  While a complaint need not allege detailed factual

5   allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to

6   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

7   A claim is facially plausible when it "allows the court to draw the reasonable inference that

8   the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678

9   (2009).

10   Federal Rule of Civil Procedure 15 further provides that a district court should freely

11   give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]n dismissing

12   for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend

13   even if no request to amend the pleading was made, unless it determines that the pleading

14   could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d

15   1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)).

16   The decision of whether to grant leave to amend is within the discretion of the district court,

17   which may deny leave to amend due to "undue delay, bad faith or dilatory motive on the

18   part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

19   undue prejudice to the opposing party by virtue of allowance of the amendment, [and]

20   futility of amendment."  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir.

21   2008) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

### A.   The Motion for Leave to Amend the First Amended Complaint Is Denied.

24   As a threshold matter, the Court addresses Mulato's request for leave to file her

25   proposed second amended complaint and her related request to stay defendants' motions to

26   dismiss until her motion for leave to amend has been resolved.  Dkt. Nos. 71, 75.  The

27   stated purpose of the proposed second amended complaint is (1) to add "two state law

28   claims for relief for negligence and constructive fraud"; (2) to "involve more focused

allegations demonstrating the plausibility of the proposed FAC in defending expected motions to dismiss under Fed. R. Civ. P. 12(b)(2) and 12 (b)(6)"; and (3) "to correct clerical errors in the amended complaint." Dkt. No. 75 at 1-2. Mulato argues that leave is should be granted because "[j]ustice requires that plaintiff be given opportunity to present her best case." *Id.* at 2.

The motion for leave to amend was filed almost two months after defendants filed their replies in support of the pending motions to dismiss, and almost a month after the Court took the motions under submission. *See* Dkt. Nos. 56, 57, 70, 75. Wells Fargo opposes the motion for the reasons that, at a minimum, there is undue delay by Mulato who does not identify facts that were not available to her at the time she filed the first amended complaint or opposed defendants' motions, and there is prejudice to Wells Fargo from having to file replies to Mulato's oppositions and respond to her supplemental briefs. Dkt. No. 89.

The Court agrees that Mulato's request for leave to amend the complaint was made with undue delay and is prejudicial to the defendants. Moreover, given that the proposed second amended complaint, Dkt. No. 74, is 91 pages, it could hardly be said that it involves "more focused allegations" as Mulato asserts. Mulato's motion for leave to file the proposed second amended complaint and her motion to stay are denied. Mulato may amend her complaint as permitted by the Court in this order.

**B.     The First Amended Complaint Is Dismissed as to the Employee Defendants for Lack of Personal Jurisdiction.**

The employee defendants move to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Dkt. No. 42. The employee defendants contend that they are not residents of California and have not had any contacts with the State of California that would support the exercise of personal jurisdiction over them. *Id.* at 7. Further, they argue that, while Wells Fargo has conducted business in California, actions by Wells Fargo do not by themselves create personal jurisdiction over its individual employees. *Id.*

Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011). Absent one of the traditional bases for jurisdiction, the Due Process Clause requires that the defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted). In determining whether the exercise of personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of the state in which it sits where, as here, there is no applicable federal statute governing personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). District courts in California may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Due Process Clause of the Constitution. Cal. Civ. Proc. Code § 410.10.

The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction is proper. *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). Where no evidentiary hearing is held regarding personal jurisdiction, "the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Nonetheless, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). In considering whether personal jurisdiction is proper, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d

1218, 1223 (9th Cir. 2011) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction. General jurisdiction exists when a defendant is domiciled in the forum state or his activities in the forum are "substantial" or "continuous and systematic." *Panavision*, 141 F.3d at 1320 (internal quotation marks omitted). Here, Mulato does not contend that the Court has general jurisdiction over the employee defendants and alleges no facts to establish that those defendants' contacts with California are substantial or continuous and systematic. Therefore, the exercise of general personal jurisdiction over the employee defendants is unjustified.

When the nonresident defendant's contacts with the forum are insufficiently pervasive to subject him to general personal jurisdiction, the court must ask whether the "nature and quality" of his contacts are sufficient to exercise specific personal jurisdiction over him. *Data Disc*, 557 F.2d at 1287. A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two of these three elements; if the plaintiff fails to establish either of them, specific personal jurisdiction over the nonresident defendant is improper. *Id.* (citations omitted). If the plaintiff satisfies the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (citations and internal quotation marks omitted).

The first prong of the specific jurisdiction test is satisfied by either "purposeful availment" or "purposeful direction" by the defendant. *Brayton Purcell*, 606 F.3d at 1128; *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199,

1206 (9th Cir. 2006) (noting that the first step "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof."). "A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

Under a purposeful availment analysis, "[a] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.*  "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).  When the exercise of personal jurisdiction over a defendant is based on the execution or performance of a contract, the court must "use a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.* at 479 (internal quotation marks and citation omitted).  Accordingly, to determine whether the purposeful availment requirement is met, the court must look to the contract's "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ." *Id.*

Alternatively, a plaintiff can satisfy the first prong by showing that the defendant purposefully directed his activities at the forum.  The Court evaluates purposeful direction by using the three-part effects test set out in *Calder v. Jones*, 465 U.S. 783 (1984), which requires that the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805 (internal quotation marks and citation omitted).

As an initial matter, the Court will address Mulato's argument that the Court should

disregard the fiduciary shield doctrine and hold that the employee defendants are subject to personal jurisdiction based on their actions taken in performance of their job duties at Wells Fargo. *See* Dkt. No. 51 at 14. Mulato acknowledges that, under the fiduciary shield doctrine, "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Id.* (quoting *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989)).

"The fiduciary shield doctrine may be ignored in two circumstances: (1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in the alleged activities." *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. 08-cv-4254 PJH, 2009 WL 29905, at *5 (N.D. Cal. Jan. 5, 2009). Mulato does not allege that Wells Fargo is the agent or alter ego of the employee defendants. Rather, Mulato argues that the Court should disregard the fiduciary shield doctrine by finding that the employee defendants were primary participants or the "guiding spirit" in "the alleged wrongdoing intentionally directed at California." Dkt. No. 51 at 8, 14; *see Davis*, 885 F.2d at 524 n.10 ("Cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity." (quoting *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir. 1980)).

As Wells Fargo points out, the cases on which Mulato relies where courts have disregarded the fiduciary shield involve individuals who are officers or directors of the corporate defendant. *See e.g.*, *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1073 (C.D. Cal. 2004) (finding personal jurisdiction over individual defendant who was not a "mere employee" but owned 50% of the subject company, was the moving force in all policies and decisions, and had the "final say"); *Davis*, 885 F.2d 522-23 (finding personal jurisdiction over individual defendants who each owned 50% of the subject company and were its only officers and directors); *j2 Global Commc'ns*, 2009 WL 29905, at *8 (finding personal jurisdiction over individual defendant who was the president, sole officer, director,

and shareholder of subject company); *see also Click v. Dorman Long Tech., Ltd.*, No. 06-cv-1936 PJH, 2006 WL 2644889, at *5 (N.D. Cal. Sept. 14, 2006) (declining to disregard the fiduciary shield and distinguishing *Davis* on the grounds that the individual defendant in *Click* was a mere employee and not an executive officer, director, or primary shareholder as the defendants in *Davis*).

The operative complaint here alleges based on information and belief that "Wells Fargo's Home Preservation Specialists (HPS) Cory Moeller and Angela Nail, along with Lana Krahn and Karen Lee are employees, agents *and officers*" of Wells Fargo Home Mortgage and Wells Fargo Bank N.A.  Dkt. No. 27 ¶¶ 1, 9 (emphasis added).  The employee defendants submitted a declaration by a Wells Fargo employee who states that none of the employee defendants is an officer or director of Wells Fargo.  Dkt. No. 56-1 ¶ 5.

In opposition, Mulato's counsel Richard Canatella submitted a declaration stating that the employee defendants "were 'employees' and 'officers.'"  Dkt. No. 52 ¶ 7.  The employee defendants object to, and move to strike paragraphs 1-13 and 18 of Richard Canatella's declaration as setting forth not facts but mere conclusions, arguments, and unsupported conjecture, and as not based on personal knowledge.  Dkt. No. 56 at 11-12. "An affidavit or declarations may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument.  Any statement made upon information or belief must specify the basis therefor.  An affidavit or declaration not in compliance with this rule may be stricken in whole or in part."  Civ. L.R. 7-5(b).  Federal Rule of Civil Procedure 56(c)(4) (previously in subdivision (e)) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *See also Juarez v. Jani-King of Cal., Inc.*, No. 09-cv-3495 SC, 2010 WL 3766649, at *2 (N.D. Cal. Sept. 24, 2010) (striking declaration of plaintiffs' attorney as argumentative, conclusory, and not based on personal knowledge in violation of Rule 7-5(b)).

The Court agrees with the employee defendants that substantial portions of Richard

Canatella's declaration consist of improper legal conclusions and argument under headings such as "Employee Defendants Availed themselves of California Law" and "Employee Defendants had Sufficient Minimum Contacts With California." *See e.g.*, Dkt. No. 52 at 3:22-7:8. Richard Canatella has not established that he has personal knowledge of the employee defendants' "decision-making authority" or their role in determining corporate policy. The Court strikes paragraphs 6, 7, and 10 of Richard Canatella's declaration, Dkt. No. 52, as argumentative, conclusory, and not based on personal knowledge. While the declaration contains additional portions that are not proper testimony, the stricken paragraphs are the ones most relevant to Mulato's opposition to the motion to dismiss.

Furthermore, Mulato has failed to rebut the employee defendants' showing that they did not have the requisite control of, or direct participation in the alleged activities to support the exercise of personal jurisdiction against them. Mulato contends that the allegations of the complaint demonstrate that "Moeller and the other employees personally directed, participated in, and authorized the illusory contract negotiations and fraudulent foreclosure activities"; that "Moeller actually set Wells Fargo company policies and oversaw day-to-day operations in loan modification decisions involving plaintiff"; that Moeller "had direct, personal involvement in and ultimate control over every aspect of the alleged wrongful conduct"; and that "by directing specific decisions in the permanent loan modification process for pecuniary gain, Moeller purposefully availed himself and his team of assistants of the privilege of conducting activities in California." Dkt. No. 51 at 13.

The employee defendants have contradicted these allegations by submitting a declaration that states that they are not parties to Mulato's loan; they only communicated with Mulato on behalf of Wells Fargo; none of them enters into loan modification agreements on behalf of Wells Fargo in their personal capacities; none of them sets Wells Fargo's company policies; none of them has the unilateral authority to grant or deny loan modification applications; and that Mulato's loan modification application was reviewed and denied solely upon criteria established by Wells Fargo. Dkt. No. 56-1 ¶¶ 2-9. The employee defendants also contend that Mulato has offered no facts to support her assertion

that the employee defendants "direct[ed] specific decisions in the permanent loan modification process for pecuniary gain."  In her opposition, Mulato states that "Home loan servicers including Wells Fargo signed Servicer Participation Agreements (SPA) with Treasury that entitled them to $1,000 for each permanent modification they made, but required them to follow Treasury guidelines and procedures."  Dkt. No. 51 at 13 n.3.  However, this assertion does not demonstrate that the employee defendants personally would benefit financially from any actions they took with respect to Mulato's loan modification request.

In an attempt to rebut the employee defendants' showing, Mulato again relies on Richard Canatella's declaration which states that the employee defendants "all exercised substantial independent authority," "were the central participants and figures in making judgments regarding HAMP loan modification decisions," and "[t]heir decisions ultimately determined Wells Fargo corporate policy regarding the processing of loan modifications as to plaintiff."  Dkt. No. 52 ¶ 7.  Richard Canatella further declares that "[e]ach of the employee defendants had decision-making authority," *id.* ¶ 10, and that "Moeller himself with the assistance of Krahn, Nail and Lee" had "complete discretion to grant or deny permanent loan modification, independent of any unilateral activity or control by the employer Wells Fargo," *id.* ¶ 6.  Mulato's opposition brief also asserts that the "employee defendants had complete discretion to negotiate and grant or deny loan modification."  Dkt. No. 51 at 18.

These assertions, however, are not supported by any evidence.  The only support for these assertions is Richard Canatella's declaration, which does not constitute competent evidence because it is not based on personal knowledge.  Moreover, these assertions flatly contradict the allegations of the first amended complaint which state that Wells Fargo engaged in "[s]etting up a system in which every call or contact by plaintiff to Wells Fargo was routed thru Moeller who (unbeknownst to plaintiff) *had no authority to make material decisions . . . .*"  Dkt. No. 27 ¶ 67(A) (emphasis added).  The first amended complaint further alleges that "Wells Fargo set up their system such that *none of the various*

*employees that plaintiff had contact with (including Moeller, Nail, Krahn and Lee) had*
*necessary authority, nor knew where to get the authority, to grant the permanent loan*
*modification* required under HAMP and Corvello and promised under the August 7 & 8
agreement." *Id.* ¶ 67(E) (emphasis added).  Mulato's proposed second amended complaint
repeats this allegation.  Dkt. No. 74 ¶ 95(E).  The cited allegations are "judicial
admissions," which are defined as "formal admissions in the pleadings which have the
effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the
fact." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  "A
statement in a complaint . . . is a judicial admission." *Id.*  "Factual assertions in pleadings
and pretrial orders, unless amended, are considered judicial admissions conclusively
binding on the party who made them." *Id.*  Mulato has failed to provide any basis that
would support disregarding the fiduciary shield.

Further, the Court finds that Mulato's remaining arguments for asserting personal
jurisdiction over the employee defendants also fail.  The first amended complaint alleges
that the employee defendants are citizens of Iowa and Texas.  Dkt. No. 27 ¶¶ 1, 9.
Declarations from the employee defendants demonstrate that they are each domiciled and
reside outside of California and that they do not: (1) have an office or business address in
California; (2) own any real property in California; (3) maintain a home, office or other
telephone number in California; (4) hold any license, permit, or certificate issued by
California; (5) maintain any bank accounts or securities accounts in California; (6) file a
California state income tax return or vote in California; or (7) receive any benefits from the
State of California.  Dkt. Nos. 42-1; 4-2; 42-3; 42-4.

Mulato has not offered any facts to rebut this showing.  Instead, she argues that the
purposeful availment/direction prong of the personal jurisdiction analysis is nonetheless
satisfied because (1) Moeller made a written offer to plaintiff in California on July 18, 2013,
to enter a contract for permanent loan modification; (2) Moeller placed calls to Mulato's
counsel in San Francisco to discuss "specific terms of the contract" and request additional
information; (3) Mulato "tendered performance by submitting an application for mortgage

assistance" and when she "continued to make regular mortgage payments"; (4) Moeller intended to deny Mulato's request for permanent loan modification, force her into default and conduct a foreclosure sale; and (5) "[t]he employee defendants purposefully directed their activities to deny plaintiff's request for permanent loan modification, and consummated the denial in California." Dkt. No. 51 at 16-20.

However, as discussed above, Mulato has not offered any facts to rebut the employee defendants' showing that they were only communicating with Mulato on behalf of Wells Fargo and not in their individual capacities. According to Mulato's own pleadings, she reached out to Wells Fargo to request a loan modification. *See* Dkt. No. 27 ¶¶ 37, 39. The Court is not convinced that it may exercise specific personal jurisdiction over the employee defendants on the basis that they communicated with Mulato, in their capacity as Wells Fargo employees, in response to her request for a loan modification. Notably, Mulato's proposed second amended complaint continues to rely on this theory to support her allegations of personal jurisdiction over the employee defendants. *See* Dkt. No. 74 ¶¶ 10-13. Because Mulato has not met her burden in making a prima facie showing that each of the employee defendants has sufficient contacts with California that would support the exercise of specific personal jurisdiction over them, the claims against the employee defendants are dismissed without prejudice.

## C. The First Amended Complaint Is Dismissed with Leave to Amend.

Wells Fargo moves to dismiss the first amended complaint in its entirety for failure to state a claim. Dkt. No. 40. For the reasons discussed below, the Court denies the motion as to the ECOA claim and grants the motion with leave to amend as to the remaining claims.

### 1. The Complaint Fails to State a Claim for Breach of Contract or Breach of the Implied Covenant of Good Faith and Fair Dealing (First and Second Claims).

Wells Fargo argues that Mulato's claims for breach of contract and breach of the implied covenant fail to state a claim because (1) Wells Fargo had no obligation under California law to offer a loan modification; (2) Wells Fargo had no obligation under HAMP to offer a loan modification; and (3) Mulato failed to allege facts showing that she entered

1   into a modification agreement with Wells Fargo, what its terms were, how Wells Fargo

2   breached them, and what damages resulted.  Dkt. Nos. 40 at 18-19; 57 at 7-8 (citing *Ngo v.*

3   *Green Tree Servicing, LLC*, No. 13-cv-2929, 2014 WL 1028885, at *2 (S.D. Cal. Mar. 13,

4   2014); *Ferchau v. CitiMortgage, Inc.*, No. 13-cv-00941 LHK, 2014 WL 27528, at *4 (N.D.

5   Cal. Jan. 2, 2014)).

6        In her first amended complaint, Mulato states that she has not brought a claim under

7   HAMP, but rather is trying to enforce a contract for permanent loan modification under the

8   Ninth Circuit's opinion in *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 880 (9th Cir.

9   2013), *as amended on reh'g in part* (Sept. 23, 2013).  Dkt. No. 27 ¶ 28.  Mulato alleges that

10  she is entitled to a permanent loan modification based on two agreements: (1) the July 18,

11  2013, letter in which "Wells Fargo agreed to consider plaintiff for 'mortgage assistance'

12  (i.e., a 'loan modification')," Dkt. No. 27 ¶ 61; and (2) "an oral agreement" reached

13  between "plaintiff (through her counsel) and Moeller" on August 7 and 8, 2013, Dkt. No. ¶

14  63.  However, the first amended complaint fails to allege a claim for breach of contract or

15  the implied covenant on either of these two theories.

16       The standard elements of a claim for breach of contract are (1) the contract, (2)

17  plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

18  damage to plaintiff therefrom.  *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999

19  (2010).  "A claim for breach of the implied covenant of good faith and fair dealing requires

20  the same elements [as a claim for breach of contract], except that instead of showing that

21  defendant breached a contractual duty, the plaintiff must show, in essence, that defendant

22  deprived the plaintiff of a benefit conferred by the contract in violation of the parties'

23  expectations at the time of contracting."  *Levy v. JP Morgan Chase*, No. 10-cv-01493, 2010

24  WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010).

25       First, Mulato does not plausibly allege an agreement that was breached.  According to

26  the first amended complaint, the July 18, 2013, letter promised a permanent loan

27  modification by stating that "*If you are eligible and your modification does not require a*

28  *trial period plan, you will receive a final loan modification agreement adjusting the terms*

*of your mortgage. . . .*" Dkt. No. 27 ¶¶ 41, 42, 52 (emphasis in complaint). However, Mulato also alleges that on September 24, 2013, Wells Fargo denied her application finding that she is not eligible because she has "*not documented a financial hardship that has reduced [her] income or increased your expenses*, thereby impacting [her] ability to pay [her] mortgage as agreed." *Id.* ¶ 50 (emphasis in complaint). In response to Mulato's request for reconsideration, on October 14, 2013, Wells Fargo again denied her application finding her ineligible because she had "*the ability to pay [her] current mortgage payment using cash reserves or assets*." *Id.* ¶¶ 50-51 (emphasis in complaint). Thus, despite Mulato's disagreement with the merits of Wells Fargo's denial, according to her own allegations, Wells Fargo denied her application for lack of eligibility. Thus, there is no basis for Mulato's assertion that Wells Fargo acted contrary to what it said it will do in the July 18, 2013, letter.

Furthermore, even if Mulato could plausibly allege that Wells Fargo determined that she was eligible, the alleged promise to provide a final loan modification agreement if her "modification does not require a trial period plan" would still not give rise to a binding contract as it is too indefinite. "To be enforceable, a promise must be definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages. . . . Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) (internal quotation marks and citations omitted). Here, Mulato's allegations do not provide a sufficient basis to determine whether Wells Fargo has failed to comply with the alleged promise.

Second, Mulato also alleges that on "July 18, 2013, [she] received a trial modification requiring that she continued to make her contract loan payments increased by impounds for taxes and insurance." Dkt. No. 27 ¶ 17; *see also* ¶ 61 ("Wells Fargo and plaintiff entered a TPP July 18, 2013"). However, there is nothing in the July 18, 2013, letter suggesting that the letter itself was an offer of a trial modification that required increased loan payments.

With respect to the increased payments, Mulato alleges that the increase from approximately $3,121, to $3,356 per month was for tax and insurance impounds, which she had paid "from the inception of the loan," though she previously did so "on her own outside of escrow." *Id.* ¶¶ 33, 67(V).  Moreover, contrary to her assertion that she entered into a contract for a loan modification requiring these increased payments, Mulato also states that she "never agreed to enter into a loan modification increasing the monthly payment on her loan account by $231," *id.* ¶ 80; that she "objected to the modification increasing her monthly contract payments," *id.* ¶ 80; that this was an "involuntarily modified payment" "to be held in trust pending fulfillment of plaintiff's request for mortgage assistance and in anticipation of a permanent loan modification," *id.* ¶ 81; that Wells Fargo increased the payment "[u]nder penalty of denial of a permanent loan modification," *id.* ¶ 7; that "[t]hough plaintiff never agreed to enter a loan modification increasing her monthly loan account, out of fear that Wells Fargo would take adverse action on her request for mortgage assistance, plaintiff submitted to the increase"; and that she "did not raise an objection during processing of her request for mortgage assistance fearing Wells Fargo would deny a loan modification . . . ." *Id.* ¶ 23.  "Contract formation requires mutual consent, which cannot exist unless the parties agree upon the same thing in the same sense." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th at 208 (2006) (internal quotation marks and citations omitted).  As demonstrated by her own allegations, to the extent Mulato changed the way she paid for tax and insurance during the processing of her request for loan modification, this was not an increased mortgage payment required under a trial modification plan as she attempts to characterize it.

Mulato's citation in her first amended complaint to *Ying Chang v. Citimortgage, Inc.*, No. 12-cv-01884, 2013 WL 5939985, at *12-14 (D. Or. Nov. 2, 2013), is also inapposite. The plaintiff in that case sufficiently alleged a claim for breach of the mortgage loan promissory note and deed of trust, based in part on the allegations that the servicer and assignee of the deed of trust unilaterally placed him into a trial modification. *Id.*  Here, Mulato is not alleging a breach of her promissory note and breach of trust, but rather that

Wells Fargo breached an agreement to provide her permanent loan modification.

Third, Mulato also alleges an oral contract for modification based on a telephone conference where "specific terms of a permanent loan modification were *discussed . . . .*" Dkt. No. 27 ¶ 42 (emphasis added). "Specifically, plaintiff's counsel and Moeller agreed that 'modification of the existing monthly principal and interest loan payment of $3,356 (on an outstanding principal balance of $572,500) *could be* modified by an interest rate reduction to 2%, amortized over 40-years, with monthly principle [sic], interest and impound payments of $2,400 per month." *Id.* (emphasis added). However, these allegations merely indicate that potential terms of modification were discussed, not that they were agreed upon. Nor do these allegations show that Wells Fargo promised to modify Mulato's loan regardless of whether she was determined to be eligible. Mulato's allegation that, in the telephone conversation on August 7, "Moeller had *apparently* determined that plaintiff qualified for permanent loan modification *because he made no contrary statement otherwise . . . ,*" *id.* ¶ 64, is speculative and is not sufficient to allege a plausible contract. Furthermore, the fact that Mulato's counsel sent a letter the next day "request[ing] that (Moeller) comply with that representation," *id.*, does not transform the telephone discussion into a binding agreement to provide loan modification. The assertion that a binding agreement to provide loan modification occurred during the August 7 telephone conference is also inconsistent with Mulato's own allegations that Wells Fargo was "reviewing plaintiff's request for a loan modification between June and February 2014" and that she "had been awaiting the results of her loan modification application since June 2013, but Wells Fargo had not responded to plaintiff's application and multiple submissions of documents and provision of additional information." *Id.* ¶ 43.

Fourth, Mulato also alleges that, because she "had made each and every contract loan payment from the time the loan was originated June 15, 2006," she was "thus eligible for a permanent loan modification as a matter of law." *Id.* ¶¶ 24, 26. In support for this assertion, Mulato cites to the Ninth Circuit's decision in *Corvello*, 728 F.3d at 881. In *Corvello*, the borrowers alleged that they received a written trial payment plan that stated in

part: "If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3 . . . ." *Id.*  The borrowers signed the plan and returned it to their lender, and they made all the trial payments. *Id.* at 881-82.  Despite that, they were never offered a permanent modification, nor were they told that they did not qualify. *Id.* at 882.  Based on these facts, the Ninth Circuit held that where the borrowers allege that "they have fulfilled all of their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement." *Id.* at 884.  Here, Wells Fargo never offered Mulato a written trial payment plan requesting modified payments, and it never accepted such modified payments from her. *See* Dkt. No. 27 ¶¶ 2, 37, 69 (alleging that the modified loan payment should be about $2,400); *see also id.* ¶¶ 61, 66, 72 (alleging that plaintiff continued making her "regular mortgage payments").  Instead, Wells Fargo informed Mulato that her application for a modification had been denied. *Id.* ¶¶ 50-51, 93, 100.  Accordingly, *Corvello* is inapposite.

Because it is not clear that Mulato could not allege facts supporting an actionable contract-based claim, however, the Court grants Wells Fargo's motion to dismiss her claims for breach of contract and breach of the implied covenant with leave to amend.

### 2.  The Complaint Fails to State a Claim for Promissory Estoppel (Third Claim).

Promissory estoppel requires: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance. *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010).  Mulato premises her promissory estoppel claim on the allegations that Wells Fargo promised to provide a permanent loan modification based on the July 18, 2013, letter and the *Corvello* decision. *See* Dkt. No. 27 ¶¶ 70-75.

Mulato's promissory estoppel claim fails for the same reasons as her contract-based

claims.  As discussed earlier, the holding of *Corvello* is inapplicable to the facts alleged in this case.  Furthermore, Mulato has not alleged a clear and unambiguous promise to provide permanent loan modification regardless of eligibility, and there is no plausible basis to infer that Wells Fargo acted contrary to what it said it will do in the July 18, 2013, letter. Mulato's allegations that she continued to make her regular mortgage payments simply show that she complied with her preexisting contractual duties and are not sufficient to show detrimental reliance on the alleged promise to provide permanent loan modification. *See* Dkt. No. 27 ¶ 75; *see Lawther v. OneWest Bank, FSB*, No. 10-cv-00054 JCS, 2012 WL 298110, at *19 (N.D. Cal. Feb. 1, 2012) (holding that "where the injury alleged as a result of reliance is that the plaintiffs made payments that they were already obligated to make under the loan contract, no claim for promissory estoppel is stated").  Finally, Mulato's allegations that she relied on Wells Fargo's conduct "by failing to explore the possibility of refinancing or marketing and selling the property herself or bankruptcy restructuring, or by failing to plan for foreclosure," are conclusory and do not show that such reliance was reasonable and foreseeable.  *See* Dkt. No. 27 ¶ 74.  Accordingly, the Court grants Wells Fargo's motion to dismiss the promissory estoppel claim with leave to amend.

### 3.   The Complaint Fails to State a Fraud-Based Claim (Fourth and Fifth Claims).

Mulato brings a claim for negligent misrepresentation, alleging that "Wells Fargo made representations that they would not foreclose on the property and that they would modify the loan, reduce the principal, and lower the interest rate, if plaintiff completed an application for a loan modification, continued to make timely monthly contract payments and provided confidential personal financial documentation."  Dkt. No. 27 ¶ 77.  In addition, Mulato brings a fraud claim which "includes the theory underpinning the negligent misrepresentation cause of action, but also includes the theory of constructive fraud."  *Id.* ¶ 78. As to the theory of constructive fraud, Mulato alleges that "defendants concealed and knowingly failed to disclose the material fact that participating servicers like Wells Fargo in the Servicer Participation Agreement are required to consider all eligible mortgage loans

with exceptions not applicable here; . . . Participating servicers are required to use reasonable efforts to remove any prohibitions and obtain waivers or approvals from all necessary parties in order to carry out any modification under the HMP [sic]"; "defendants specifically intended to deceive and did deceive plaintiff by failing to disclose terms of their servicer participation agreement with Fannie Mae with the intent to conceal from plaintiff the specific requirements for a permanent loan modification"; and "Wells Fargo failed to disclose and concealed its conflict of interest arising from the fact that it has a strong pecuniary interest in denying borrower applications for permanent loan modification rather than granting them." *Id.* ¶¶ 79-80; *see also id.* ¶ 82.

Under California law, to state a claim for negligent misrepresentation, the plaintiff must allege: (1) a misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the misrepresentation; (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and (5) resulting damage. *Hosseini v. Wells Fargo Bank, N.A.*, No. 13-cv-02066 DMR, 2013 WL 4279632, at *7 (N.D. Cal. Aug. 9, 2013). In addition, Mulato must allege the existence of a duty of care between her and Wells Fargo. *See id; see also Lindberg v. Wells Fargo Bank N.A.*, No. 13-cv-0808 PJH, 2013 WL 3457078, at *5 (N.D. Cal. July 9, 2013).

To bring a claim for the tort of fraudulent misrepresentation, the plaintiff must allege: 1) a misrepresentation; 2) knowledge of falsity (or "scienter"); 3) intent to defraud, i.e., to induce reliance; 4) justifiable reliance; and 5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). "Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship. [A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 415 (2000). As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the

scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citation omitted).  The test for determining whether a financial institution exceeded its role as money lender and thus owes a duty of care to a borrower-client involves "the balancing of various factors, among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* at 1098.  As this Court has previously noted, several cases in our District have recently found that a lender may have a special duty of care when engaging in the loan modification process.  *See Curley v. Wells Fargo & Co.*, No. 13-cv-03805 NC, 2014 WL 2187037, at *3 (N.D. Cal. May 23, 2014); *see also Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. 13-cv-05881 LB, 2014 WL 890016, at *17 (N.D. Cal. Mar. 3, 2014) ("While a lender may not have a duty to modify the loan of any borrower who applies for a loan modification, a lender surely has a duty to submit a borrower's loan modification application once the lender has told the borrower that it will submit it, as well as a duty to not foreclose upon a borrower's home while the borrower's loan modification is being considered once the lender has told the borrower that it won't foreclose during this time and to ignore all foreclosure-related notices.").

Here, Mulato has failed to allege a duty of care as required to state a claim for negligent misrepresentation or constructive fraud.  To the extent Mulato premises her fraud-based claims on the representations made by Wells Fargo in the July 18, 2013, letter and the telephone call between Mulato's counsel and Moeller on August 7, 2013, these communications do not show that Wells Fargo exceeded its role as money lender and thus assumed a duty of care.  Based on the allegations in the first amended complaint, Wells Fargo at most promised to provide a final modification agreement if Mulato is eligible and her modification does not require a trial period plan, subsequently discussed with her potential terms of modification, and ultimately denied the request for modification on the

basis of lack of eligibility.  *See* Dkt. No. 27 ¶¶ 41, 42, 50-52.  With respect to her

allegations of increased payments for tax and insurance impounds, Mulato alleges that she

had made such payments "from the inception of the loan," though she previously did so "on

her own outside of escrow."  *See* Dkt. No. 27 ¶¶ 33, 67(V), 80.  The Court finds that, based

on the facts alleged here, the balancing of the relevant factors weighs against finding that

Wells Fargo owed a duty of care to Mulato.

Furthermore, Mulato does not plausibly allege any of the elements of negligent or

intentional misrepresentation based on the representations made in the July 18, 2013, letter

or the August 7, 2013, telephone call.  And to the extent Mulato attempts to premise such

fraud claims on Wells Fargo's conduct outside the July 18, 2013, letter and August 7, 2013,

telephone call, the Court agrees with Wells Fargo that Mulato has not alleged such

misrepresentations with the particularity required by Federal Rule of Civil Procedure 9(b).

Because it is not certain that Mulato cannot allege facts indicating that Wells Fargo

made a misrepresentation and went beyond the typical role of a money lender in this case

and thus assumed a duty of care to Mulato, the Court grants leave to amend the fraud-based

claims.

### 4. The Complaint Fails to State a Claim Based on Debt Collection Practices (Seventh and Ninth Claims).

In her opposition, Mulato states that she withdraws her seventh cause of action, under

the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*  Dkt. No. 53 at 22:1-4.  In

withdrawing her FDCPA claim, Mulato cites to *O'Connor v. JP Morgan Chase*, No. 14-cv-

00178 KAW, 2014 WL 2216011, at *8 (N.D. Cal. May 29, 2014) which holds that

"mortgagors, mortgage servicing companies, and any assignees of a debt are not debt

collectors under the FDCPA so long as the debt was not in default at the time it was

assigned" and that "[t]he act of foreclosing on a property does not constitute debt collection

within the meaning of the FDCPA."  Accordingly, the FDCPA claim is dismissed.

Additionally, Mulato's ninth cause of action alleges that Wells Fargo violated

California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788.1, *et*

*seq.*, which was enacted, in part, "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts."  Dkt. No. 27 ¶ 96 (quoting (Cal. Civ. Code § 1788.1(b)).  Wells Fargo moves to dismiss this claim on the grounds that (1) Wells Fargo never threatened Mulato with foreclosure while she was current on her loan, and that (2) in any event, the only threatening behavior attributed to Wells Fargo relates to the institution of foreclosure which is not debt collection under the Rosenthal Act.  *See* Dkt. No. 27 ¶ 96; Dkt. No. 40 at 28; Dkt. No. 57 at 15.  "Numerous courts have held that the mere allegation that a defendant foreclosed on a deed of trust does not implicate the Rosenthal Act. . . .  Where the claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process, however, a remedy may be available under the Rosenthal Act."  *Reyes v. Wells Fargo Bank, N.A.*, No. 10-cv-01667 JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011) (internal quotation marks and citations omitted).

Mulato's opposition does not address Wells Fargo's motion to dismiss this claim, and instead mistakenly asserts that Wells Fargo "has not moved to dismiss" it.  Dkt. No. 53 at 5 n.1.  The first amended complaint alleges that "Wells Fargo engaged in a plan or scheme and pattern and practice to obtain title and possession of plaintiffs' home," and that "[s]pecifically," Wells Fargo failed to evaluate Mulato for a HAMP loan modification in good faith and continuously threatened foreclosure.  Dkt. No. 27 ¶ 96.  Mulato alleges that certain letters she received from Wells Fargo were ambiguous, unclear, confusing, and threatening regarding possible foreclosure.  *See* Dkt. No. 27 ¶ 41, 43, 59, 96.  She does not, however, allege a factual basis for her conclusory assertion that the letters were ambiguous, unclear, confusing, or threatening, much less that they were unfair or deceptive debt collection activities.  The Rosenthal Act claim is dismissed with leave to amend.

### 5.     The Motion to Dismiss Is Denied as to the ECOA Claim (Eighth Claim).

Plaintiff's eighth cause of action claims that Wells Fargo violated § 1691(d)(1) and (2) of ECOA because her application for a loan modification was "complete" as of August 7, or at the latest, August 16, 2013, but Wells Fargo did not send denial notices until September 19 and October 14, 2013, which was more than 30 days later.  *See* 15 U.S.C.

1   § 1691(d)(1)-(2); Dkt. No. 27 ¶¶ 6-7, 89-95. Wells Fargo argues that this claim should be

2   dismissed because "Plaintiff's allegations and exhibits show that her application was not

3   complete on those dates."  *See* Dkt. No. 57 at 16.

4          The first amended complaint alleges that, on July 23, 2013, Mulato "submitted the

5   13-page completed application with responsive documentation to Wells Fargo."  Dkt. No.

6   27 ¶ 41.  Mulato further alleges that "Moeller made statements and took actions which

7   suggested that plaintiff's application for permanent loan modification was complete as of

8   August 7, 2013," *id.* ¶ 92, and that "the application was completed on August 16, at the

9   latest," *id.* ¶ 94.  While the first amended complaint also contains allegations indicating that

10  Wells Fargo requested and Mulato provided further information regarding her application

11  after August 16, 2013, Mulato disputes whether such further information was necessary to

12  render her application "complete" for the purposes of ECOA.  *See e.g.*, Dkt. No. 27 ¶¶ 44-

13  45, 47-48.  The first amended complaint states that "[w]hether Plaintiff's application was

14  'complete' pursuant to the statute is a question of fact, and will depend on the type of

15  information the Defendant regularly obtains and considers in evaluating credit applications

16  as well as Defendant's diligence in obtaining such information."  Dkt. No. 27 ¶ 6 (citing

17  *Dufay v. Bank of America*, 94 F.3d 561, 564-65 (9th Cir. 1996)); *see also* 12 C.F.R. § 202.2

18  (defining "completed application" for purposes of ECOA as "an application in connection

19  with which a creditor has received all the information that the creditor regularly obtains and

20  considers in evaluating applications for the amount and type of credit requested (including,

21  but not limited to, credit reports, any additional information requested from the applicant,

22  and any approvals or reports by governmental agencies or other persons that are necessary

23  to guarantee, insure, or provide security for the credit or collateral)").  While Wells Fargo

24  might be correct that Mulato is unlikely to prevail on the merits of this claim, the argument

25  that Mulato's claim was still incomplete as of August 16 presents a factual dispute that is

26  inappropriate for resolution on a motion to dismiss.

27         The Court is also not persuaded by Wells Fargo's argument that the ECOA claim

28  should be dismissed for failure to allege any resulting damages caused by any unlawful

delay in Wells Fargo notifying Mulato that her application had been denied. Dkt. No. 57 at 16. In her first amended complaint, Mulato alleges that "Wells Fargo's written rejection of plaintiff's loan modification application and statement of reasons came significantly later than thirty days after the completed application and plaintiff was not in default" and that "Wells Fargo's delay caused plaintiff to make $10,000 in payments she could not afford to make and incur thousands more in attorney's fees while the modification process dragged on." Dkt. No. 27 ¶ 7. At this pleading stage, the Court draws all reasonable inferences in Mulato's favor. Accordingly, the Court denies Wells Fargo's motion to dismiss as to the ECOA claim.

**6.     The Complaint Fails to State a Claim under HBOR (Tenth Claim).**

Mulato's tenth cause of action alleges that Wells Fargo violated several provisions of the California Homeowner Bill of Rights ("HBOR"). Dkt. No. 27 ¶¶ 97-101. Wells Fargo makes three arguments for why this cause of action should be dismissed.

First, Wells Fargo points out that California Civil Code § 2924.12(c) allows for violations to be cured prior to the time that trustee's deed upon sale is recorded. Cal. Civ. Code § 2924.12(c) ("A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of a trustee's deed upon sale.") Wells Fargo contends that here, no notice of default has even been recorded and that, therefore, Mulato's HBOR allegations presently fail to state a claim. Dkt. No. 57 at 17; *see Ellis v. Bank of Am., N.A.*, No. 13-cv-5257, 2013 WL 5935412, at *4 (C.D. Cal. Oct. 28, 2013) (dismissing HBOR claims because there was currently no foreclosure activity against the property and plaintiff did not allege that a trustee's sale ever took place). Mulato does not address this argument in her opposition. *See* Dkt. No. 53 at 24-25. In her first amended complaint, Mulato alleges that "Wells Fargo intends to file a notice of default," Dkt. No. 27 ¶ 98, and "any Trustee's Deed would necessarily be recorded after the instant complaint was filed," *id.* ¶ 97. The Court finds that the HBOR claim is deficient and dismisses the

claim with leave to amend.

Second, Wells Fargo contends that Mulato's HBOR claim should also be dismissed because Mulato cannot allege that the property at issue here was owner-occupied. California Civil Code § 2924.15 provides that "paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units.  For these purposes, 'owner-occupied' means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes."  Cal. Civ. Code § 2924.15(a); *see also Corral v. Select Portfolio Servicing, Inc.*, No. 14-cv-02251 MEJ, 2014 WL 3900023, at *4-5 (N.D. Cal. Aug. 7, 2014) (dismissing HBOR claim due to plaintiffs' failure to plead that the property is their principal residence); *Banuelos v. Nationstar Mortgage, LLC*, No. 13-cv-05308 HRL, 2014 WL 1246843, at *3 (N.D. Cal. Mar. 25, 2014) (dismissing HBOR claim where plaintiff had not alleged facts showing that the property was "owner-occupied" within the meaning of the statute); *Masson v. Selene Fin. LP*, No. 12-cv-05335 SC, 2013 WL 271256, at *3 (N.D. Cal. Jan. 24, 2013) (dismissing HBOR claim in part for failure to meet the owner-occupied requirement where plaintiff admitted that she did not currently live at the property).

Wells Fargo argues that Mulato's prior allegations and exhibits show that the Rae property was not her principal residence while she was applying for a loan modification. Dkt. No. 57 at 17.  As an initial matter, Wells Fargo does not cite any authority to support its assertion that the only relevant time for purposes of the owner-occupied requirement is the time when Mulato applied for loan modification.  The language of California Civil Code § 2924.15(a) is silent on this issue, providing that "'owner-occupied' means that the property is the principal residence of the borrower and is security for a loan."  Here, Mulato's first amended complaint alleges that the Rae property is currently her primary residence.  *See* Dkt. No. 27 ¶¶ 1, 8, 32, 99.

Wells Fargo contends that courts may consider allegations in previous complaints in

determining the plausibility of the current pleadings.  Dkt. No. 57 at 17 n.4 (citing *Gammel v. Hewlett-Packard Co.*, No. 11-cv-1404, 2013 WL 1947525, at \*5 (C.D. Cal. May 8, 2013)).  Specifically, Wells Fargo argues that the allegations in the original complaint that Mulato is a "domiciliary of Pacifica" and "an individual residing at Inverness Drive, City of Pacifica," Dkt. No. 1 ¶¶ 1, 8, conflict with the allegations of the first amended complaint that she is a "resident of San Francisco" and "an individual residing at 94 Rae Avenue, San Francisco," Dkt. No. 27 ¶¶ 1, 8.  However, the allegations in the two complaints refer to Mulato's present residence/domicile as of the time of filing the complaint, and are thus not necessarily inconsistent with each other, or with the claim that the Rae property is Mulato's *principal* residence for the purposes of HBOR.  Furthermore, the allegations in the original complaint as to Mulato's intentions in purchasing the Rae property (for example, that she expected at some point in time that her sister would buy her out) do not establish as an undisputed fact that Mulato did not use the Rae property as a primary residence.  *See* Dkt. No. 1 ¶ 25.  Wells Fargo also points that, in her original complaint, Mulato alleges that "[o]n reaching age 70 in 2013 plaintiff retired . . . .  Thus, Inverness became her primary residence though she spent substantial time at Rae eating and enjoying the company of her nieces, nephews and other family members who frequented Rae." Dkt. No. 1 ¶ 28.  By contrast, the first amended complaint alleges that "[o]n reaching age 70 in 2013 plaintiff retired . . . .  Plaintiff moved her furniture into Rae which became her primary residence. Dkt. No. 27 ¶ 32.  However, while these allegations appear inconsistent, it is unclear what periods of time they refer to, and do not necessarily preclude an argument that Mulato resided in both places at least for some time, but that her "principal residence" for purposes of HBOR was the Rae property.  Furthermore, these allegations refer to earlier periods of time and thus do not render implausible the allegation that the Rae property is Mulato's current "principal residence" for purposes of HBOR.  *See* Dkt. No. 1 ¶¶ 1, 8, 28.

At this stage, it is not appropriate for the Court to resolve factual inconsistencies on the merits.  As the Ninth Circuit explained in *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-60 (9th Cir. 2007), "there is nothing in the Federal Rules of Civil Procedure

1   to prevent a party from filing successive pleadings that make inconsistent or even

2   contradictory allegations."  "Unless there is a showing that the party acted in bad faith—a

3   showing that can only be made after the party is given an opportunity to respond under the

4   procedures of Rule 11—inconsistent allegations are simply not a basis for striking the

5   pleading." *Id.*

6   Third, Wells Fargo argues that, even if the property were owner-occupied and a

7   notice of default had been recorded, Wells Fargo is insulated from liability for alleged

8   HBOR violations under § 2924.12(g) of the HBOR.  That section provides that "[a]

9   signatory to a consent judgment entered in the case entitled United States of America et al.

10  v. Bank of America Corporation et al., filed in the United States District Court for the

11  District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the

12  relevant terms of the Settlement Term Sheet of that consent judgment with respect to the

13  borrower who brought an action pursuant to this section while the consent judgment is in

14  effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9,

15  2924.10, 2924.11, or 2924.17."  Cal. Civ. Code § 2924.12(g); *see* Dkt. No. 41-1 at 56.

16  Wells Fargo contends that, although Mulato "makes the legal assertion that Wells Fargo

17  was not in compliance with the consent judgment (FAC ¶ 67), she does not identify any

18  specific provisions and allege how Wells Fargo violated them."  Dkt. No. 57 at 17-18.

19  As other courts have recognized, however, Wells Fargo's argument fails at the motion

20  to dismiss stage.  *See Rijhwani*, 2014 WL 890016, at *9 (the "safe harbor" of § 2924.12

21  "appears to be an affirmative defense to be raised on summary judgment and for which

22  Wells Fargo has the burden of proof"); *Segura v. Wells Fargo Bank, N.A.*, No. 14-cv-04195,

23  2014 WL 4798890, at *5 (C.D. Cal. Sept. 26, 2014) (noting that "[a] number of federal

24  courts in California have rejected Wells Fargo's argument and refused to dismiss claims at a

25  similar stage on these grounds.").

26  ### 7.      The Complaint Fails to State a Claim under the UCL (Sixth Claim).

27  Mulato brings a claim under California's Unfair Competition Law ("UCL") which

28  prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

1    untrue or misleading advertising." Dkt. No. 27 ¶¶ 83-87; Cal. Bus. & Prof. Code § 17200.

2    For the reasons provided by Wells Fargo, the Court dismisses this claim with leave to

3    amend because Mulato has failed to allege facts that show her standing to sue under the

4    UCL. *See* Dkt. No. 57 at 18. Additionally, Mulato has failed to plead a factual basis to

5    state a claim under the "unfair" or "fraudulent" prongs of the UCL. *See id.* at 19.

6          **8.    Preemption under HOLA**

7          Wells Fargo moves to dismiss all of Mulato's state law claims on the basis that they

8    are preempted by the federal Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*

9    Dkt. No. 40 at 34-37. A preemption analysis under HOLA requires a court to determine

10   whether the law at issue is identified in 12 C.F.R. § 560.2(b), which provides a

11   nonexclusive list of the types of state laws preempted by HOLA. *See Silvas v. E*Trade*

12   *Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).

13         Wells Fargo contends that the state law claims are premised on Wells Fargo's

14   allegedly improper processing of a loan modification and thus "directly implicate several

15   preempted categories" under 12 C.F.R. § 560.2(b). Dkt. No. 40 at 36. In opposition,

16   Mulato argues that her claims "are not based on Wells Fargo's disclosures nor the

17   provisions of credit-related documents and communications generated in the negotiation of

18   a permanent loan modification," but rather "track" *Corvello* and also rely on the general

19   duty not to misrepresent material facts. Dkt. No. 53 at 29. Wells Fargo replies that

20   Mulato's claims do not "track" *Corvello* because she never received a trial payment plan or

21   made modified trial payments, and because she has failed to state any claim premised on the

22   assertion that Wells Fargo made any misrepresentation to her. Dkt. No. 57 at 19-21.

23         In light of the Court's finding that Mulato has failed to state a claim for relief under

24   state law and the Court's dismissal of those claims with leave to amend, and assuming

25   without deciding that HOLA applies to Wells Fargo here, it is premature to analyze whether

26   those claims would be preempted under HOLA. *See Ambers v. Wells Fargo Bank, N.A.*,

27   No. 13-cv-03940 NC, 2014 WL 883752, at *6 (N.D. Cal. Mar. 3, 2014).

28   //

**D.    The Motion for Preliminary Injunction Is Denied.**

Mulato moves for preliminary injunction "to enjoin any and all proceedings regarding the subject property at 94 Rae Avenue, San Francisco, CA." Dkt. Nos. 28, 30. Specifically, Mulato seeks to enjoin Wells Fargo from "(1) reporting information about plaintiff's loan account to credit bureaus, including late payments, missed payments, or other defaults on the account; (2) charging application fees, servicing fees, late payment fees for untimely payments or fees for foreclosure related services, expenses incurred as a result of plaintiff's default on the loan including, but not limited to, reasonable attorneys' fees and costs of title evidence or corporate advance fees, any money paid to a foreclosure trustee to reconvey the defaulted property to Wells Fargo while a complete loan modification application was pending, or an appeal was pending, or pendent lite; (3) accelerating the principal balance of the subject loan, (4) recording a notice of default, or recording notice of trustee sale, (5) hypothecating, pledging, assigning, encumbering, conveying or selling or attempting to sell any interest in 94 Rae Avenue, San Francisco, (6) foreclosing under power of sale in the subject deed of trust, (7) levying upon, executing against or selling any interest in the property at 94 Rae Avenue, San Francisco, (8) commencing or continuing summary eviction proceedings for recovery of possession of 94 Rae Avenue, San Francisco, under Code Civ. Proc., §§ 1161a, subd. (b)(4) or any other remedy at law, and staying any pending unlawful detainer action, or any such action to be filed, or transferring any such action to this Court." Dkt. No. 30 at 7-8.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). But if a plaintiff can only show that there are "serious questions going to the merits," a preliminary injunction may still issue if the "balance of hardships tips sharply in the plaintiff's favor," and the other two *Winter* factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011); *Drakes Bay Oyster Co. v.*

*Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014).  "Preliminary injunction is as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

For the reasons set forth in the Court's ruling on Wells Fargo's motion to dismiss the first amended complaint, Mulato cannot show serious questions going to the merits, much less a likelihood to succeed on the merits.  *See id.* ("When the chance of success is very low, courts have refused to grant preliminary injunctive relief to halt a home foreclosure."); *Sterling v. Deutsch Bank Americas*, No. 14-cv-00827 CW, 2014 WL 1102558, at *3 (N.D. Cal. Mar. 18, 2014) (denying plaintiffs' application for temporary restraining order and preliminary injunction to halt a state court unlawful detainer proceeding where plaintiffs had not demonstrated a likelihood that the foreclosure and corresponding sale were faulty and thus could not show a likelihood that they were entitled to occupy the premises at issue).  Accordingly, Mulato's motion for preliminary injunction is denied.

**E.    The Motions for Sanctions Are Denied.**

Also pending before the Court are two motions for sanctions.  On September 8, 2014, Wells Fargo filed a motion for sanctions against Mulato and her counsel of record pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority. Dkt. No. 78.  The motion was served on plaintiff's counsel on August 7.  Wells Fargo filed an amended notice of motion, which was served on August 13.  Dkt. No. 80.  In Wells Fargo's amended notice of motion, Wells Fargo only seeks Rule 11 sanctions against plaintiff's counsel, Richard Canatella and Cotter & Del Carlo, and not Mulato's other counsel, David Olick, or Mulato.  *Id.*; Dkt. No. 97 at 5 n.2, 15-16.

Mulato and her counsel David Olick filed two motions for sanctions against Wells Fargo, both of which were withdrawn shortly after their filing.  *See* Dkt. Nos. 82, 84, 90, 94. Mulato filed a separate motion for sanctions against Wells Fargo and its counsel, styled as a "counter motion," signed by Mulato's counsel Richard Canatella, which was served on Wells Fargo's counsel on August 21, 2014.  Dkt. No. 85.

The Court held a hearing on the motions for sanctions on December 17, 2014.

### 1.     Applicable Legal Standards

"Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

Federal Rule of Civil Procedure 11(b) provides in part that "[b]y presenting to the court a pleading, written motion, or other paper," an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances": "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; and "(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b).

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)). As shorthand for this test, the word "frivolous" is used "to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Id.* (quoting *Moore v. Keegan Mgmt. Co (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 434 (9th Cir. 1996)). Furthermore, "the mere existence of one non-frivolous claim" in a complaint does not immunize it from Rule 11 sanctions. *Id.* at 677 (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990)).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."   Fed. R. Civ. P.

1    11(c)(2).

2    Additionally, any attorney "who so multiplies the proceedings in any case

3    unreasonably and vexatiously may be required by the court to satisfy personally the excess

4    costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28

5    U.S.C. § 1927.  For § 1927 sanctions to apply, "if a filing is submitted recklessly, it must be

6    frivolous, while if it is not frivolous, it must be intended to harass . . . . [R]eckless

7    nonfrivolous filings, without more, may not be sanctioned."  *B.K.B. v. Maui Police Dep't*,

8    276 F.3d 1091, 1107 (9th Cir. 2002) (quoting *In re Keegan Mgmt. Co., Sec. Lit.*, 78 F.3d

9    431, 436 (9th Cir. 1996)).

10   Finally, under its inherent powers, a court may impose sanctions in the form of

11   attorneys' fees when the losing party has acted "in bad faith, vexatiously, wantonly, or for

12   oppressive reasons."  *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir.

13   1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59

14   (1975)).  However, "because of their very potency, inherent powers must be exercised with

15   restraint and discretion."  *See B.K.B.*, 276 F.3d at 1108 (quoting *Chambers v. NASCO, Inc.*,

16   501 U.S. 32, 44 (1991)).  "[A]n attorney's reckless misstatements of law and fact, when

17   coupled with an improper purpose, . . . , are sanctionable under a court's inherent power."

18   *Fink*, 239 F.3d at 994.

19        **2.      Wells Fargo's Motion for Sanctions Is Denied.**

20   Accordingly to Wells Fargo, its motion "is narrowly tailored to seek sanctions based

21   on Plaintiff and Plaintiff's Counsel's decision to bring, and subsequently refuse to dismiss,

22   two frivolous causes of action against Wells Fargo in the FAC": the ECOA and HBOR

23   claims.  Dkt. No. 78 at 10:13-15; Dkt. No. 97 at 5:1-5.  Specifically, Wells Fargo seeks

24   sanctions for Mulato's continued assertion of the ECOA claim, arguing that the claim is

25   factually baseless in light of the "undisputed evidence" that Mulato's loan modification

26   application was not complete prior to September 13, 2013.  Dkt. No. 78 at 10, 17-18.  As to

27   the HBOR claim, Wells Fargo contends that the claim is factually baseless in light of the

28   "undisputed evidence (as well as prior allegations)" as to Mulato's principal residency

during "the relevant time period." *Id.* at 21-22, 23-24.  Wells Fargo seeks an award of "all reasonable costs and attorneys' fees incurred in responding to the ECOA and HBOR claims in the FAC and in bringing this motion from Plaintiff and Plaintiff's Counsel."  Pursuant to the Court's inherent authority, Wells Fargo also requests an order dismissing the ECOA and HBOR causes of action. *Id.* at 24.

As an initial matter, the Court disagrees with Mulato's argument that Wells Fargo's Rule 11 motion is procedurally barred because it was filed after Mulato served a "corrective" proposed second amended complaint within the "safe harbor" period in violation of Rule 11(c). *See* Dkt. No. 101 at 4; Fed. R. Civ. P. 11(c)(1) ("A motion for sanctions must be served, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.").  The proposed second amended complaint, however, continues to assert the ECOA and HBOR claims. *See* Dkt. No. 74 ¶¶ 122-123, 125-129.  Accordingly, the claims challenged in the motion for sanctions were neither withdrawn nor "appropriately corrected."

Turning to the merits of Wells Fargo's motion, all of the requested sanctions are premised on Mulato's continued assertion of the ECOA and HBOR claims which Wells Fargo contends are factually unsupported and frivolous. *See* Dkt. No. 78 at 13, 20-21. The Court has considered the allegations of the operative, prior, and proposed complaint, as well as Wells Fargo's citations to arguably inconsistent statements in various documents, and the arguments made by counsel in their briefs and at the hearing.  However, the Court is not convinced by Wells Fargo's arguments that "undisputed" evidence shows that the ECOA and HBOR claims are baseless.

Wells Fargo also has failed to show conduct tantamount to bad faith to justify its request for sanctions.  The Court is most troubled by the apparent inconsistency of the allegations regarding Mulato's primary residence upon her retirement in 2013 in the original and first amended complaint. *Compare* Dkt. No. 1 ¶ 28, *with* Dkt. No. 27 ¶ 32. While the Court does not find that this apparent inconsistency renders the HBOR claim

1   implausible, or baseless, Mulato's counsel's explanation for the inconsistency is less than

2   adequate.[2]  First, counsel's argument that the original complaint "went out of the case"

3   when the first amended complaint was filed, does not make the allegations of the original

4   complaint irrelevant for purposes of Rule 11.  *See* Dkt. No. 53 at 25.  Second, counsel

5   asserted that "although the allegations in the original complaint were true when they were

6   made February 27, 2014, those allegations were superceded [sic] by changed

7   circumstances." Dkt. No. 53 at 25; *see also* Dkt. No. 92 at 7.  When the Court inquired at

8   the hearing as to what were the changed circumstances that provided a basis for the

9   amended allegation, Richard Canatella responded that the only changed circumstances were

10  with respect to "the lawyering."  He indicated that between the filing of the original and

11  first amended complaint, he had the opportunity to conduct "interviews."  Canatella did not

12  explain why he had not discovered the correct facts regarding Mulato's primary residence

13  after a reasonable inquiry earlier, given that he represented her during the loan modification

14  process, "represented the Mulato family (plaintiff and her sister Zosima B. Mulato) since

15  2005, and continues to serve as a 'family' attorney."  *See* Dkt. Nos. 52 ¶ 1; 92-1 ¶ 11.

16  However, while counsel's conduct in filing the inconsistent allegations might have been

17  negligent or careless, the record does not show that it was in bad faith or for an improper

18  purpose.  Accordingly, the Court denies Wells Fargo's motion for sanctions.

19      **3.     Mulato's Motion for Sanctions Is Denied.**

20      Mulato's "counter motion" for sanctions is made "on the ground that neither Rule 11,

21  nor 28 U.S.C. § 1927, nor the Court's inherent powers warrant imposition of sanctions

22  against Plaintiff for refusing to dismiss the eighth and tenth causes of action in the

23  (amended complaint) or payment of monetary sanctions to the Court," and thus Wells

24  Fargo's motion for sanctions against Mulato "is itself frivolous and brought for an improper

25  _____

26  [2]  Mulato's counsel, Richard Canatella, submitted a declaration stating that his co-counsel, David
    Olick, had no knowledge regarding Mulato's residences or her change of residence, and has played
27  no part in drafting or filing any of the complaints in this case.  Dkt. No. 92-1 ¶ 11.  Because the
    Court denies Wells Fargo's motion for sanctions, it does not need to address David Olick's
28  argument that he is not subject to sanctions due to his lack of involvement despite the fact that his
    name is on the caption page and on the signature page of Mulato's filings in this case.

purpose." Dkt. No. 85 at 4. Mulato asserts that the Court should grant her motion for sanctions pursuant to Rule 11 and § 1927, and award her all reasonable costs and attorneys' fees incurred in responding to Wells Fargo's motion for sanctions. Dkt. No. 85 at 28.

Based on the record and the Court's observation of the conduct of counsel in this case, the Court finds that Mulato's request for sanctions is not warranted on any of the grounds asserted in her "counter motion." The "counter motion" is denied.

## IV. CONCLUSION

The Court rules on the pending motions as follows:

1.   Mulato's request for a stay of defendants' motions to dismiss, Dkt. No. 71, and her motion for leave to amend the first amended complaint, Dkt. No. 75, are denied.

2.   The employee defendants' motion to dismiss for lack of personal jurisdiction, Dkt. No. 42, is granted, and all the claims asserted against them in this case are dismissed without prejudice.

3.   Wells Fargo's motion to dismiss, Dkt. No. 40, is denied as to the ECOA claim, and granted as to the remaining claims with leave to amend. Mulato's requests for leave to file supplemental briefs, Dkt. Nos. 59, 63, are granted.

4.   Mulato's motion for preliminary injunction, Dkt. No. 28, is denied.

5.   Wells Fargo's motion for sanctions, Dkt. No. 78, is denied.

6.   Mulato's motion for sanctions, Dkt. No. 85, is denied.

IT IS SO ORDERED.

Date: December 19, 2014

Nathanael M. Cousins
United States Magistrate Judge