UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA BUMATAY MULATO, ZOSIMA BUMATAY MULATO,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | Case No.14-cv-00884-NC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 148 |

Yolanda and Zosima Mulato allege that Wells Fargo fraudulently denied their request for a loan modification because the Mulatos are Filipino. The Court previously dismissed the first amended complaint and provided guidance as to which facts were lacking. The Court finds that few facts were added to the second amended complaint, and the facts that were added are insufficient to state a claim. Thus, the Court GRANTS defendant's motion to dismiss without leave to amend.

**I.   BACKGROUND**

   **A.   Facts Alleged**

The complaint is 39 pages of mixed argument, legislative history, law, and fact. The Court has attempted to sift out the facts asserted that are relevant to the Mulatos' claims and summarizes them below.

Plaintiffs Yolanda and Zosima Mulato are joint tenants in a single-family residence in San Francisco. Second Amended Complaint ("SAC"), Dkt. No. 147 ¶ 18.   Plaintiffs
Case No. 14-cv-00884-NC

are 71 and 60 year-old Filipino women, never married or divorced. SAC ¶ 16. Yolanda acquired the subject property in 2001, and Zosima has lived there continuously with her children to the present.[1] SAC ¶ 18. In 2014, Yolanda gifted an equal undivided joint tenancy interest in the property to Zosima. SAC ¶ 18.

Yolanda's acquisition of the property was financed in 2006 by a pic-a-payment adjustable rate loan made by the World Savings Bank in the amount of $551,000, with an adjustable interest rate of 6.510%. SAC ¶ 19. World Savings Bank merged twice, ultimately becoming Wells Fargo Bank, N.A. SAC ¶ 19.[2]

Yolanda was the chief operating room nurse at San Francisco General Hospital and San Mateo General Hospital for over 25 years until her retirement in 2013. SAC ¶ 18. Yolanda operated a senior care home from 2003 to 2013 in Pacifica. SAC ¶ 20. In 2013, she surrendered her state and local licenses to operate the home because she could no longer physically manage the 6-bed facility nor operate at a profit. SAC ¶ 20. As a result, Yolanda experienced declining monthly income. SAC ¶ 20. Around 2006, Yolanda sold her residence in Daly City, and used the sale proceeds for down payments on three single family homes in Elk Grove that she rented as an investment for retirement. SAC ¶ 20. When the housing bubble burst, the tenants left, and Yolanda "lost her entire investment through foreclosure by Wells Fargo." SAC ¶ 20. Yolanda inquired with a Wells Fargo representative whether she was eligible for mortgage assistance on the San Francisco property through HAMP, and a representative informed her that the foreclosure of the Elk Grove properties made her ineligible. SAC ¶ 21.

Yolanda applied to Wells Fargo for mortgage assistance in June 2013, stating she was at imminent risk of default. SAC ¶ 23. A Wells Fargo agent, Cory Moeller, responded on July 18, 2013 with the following:

---

[1] The Court will refer to the Mulatos by first name in order to be specific. The Court intends no disrespect in doing so.
[2] The defendants in this case are Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. Defendant Wells Fargo Bank, N.A. has indicated that these are the same entity, and thus the Court refers to them together as defendant Wells Fargo.

Case No.14-cv-00884-NC             2

*If you are eligible and your modification requires a trial period plan, you will receive instructions regarding your new trial payment amount. Once you meet all requirements of the trial (period plan), you will receive a final loan modification agreement adjusting the terms of your mortgage.

*If you are eligible and your modification does not require a trial period plan, you will receive a final loan modification agreement adjusting the terms of your mortgage.

*If you're not eligible for a loan modification program, we'll look at other options to help you avoid foreclosure. As a reminder, it's important for you to continue making your regular mortgage payments until you hear from us.

Yolanda interpreted the offer as a "trial period plan." SAC ¶ 23. On July 23, 2013, Yolanda completed her request for mortgage assistance application and sent the completed, signed, and certified application to Moeller. SAC ¶ 23. Yolanda had a housing debt to income payment ration greater than 31% of monthly pre-tax income. SAC ¶ 26. On August 7, 2013, Yolanda's counsel and Moeller had a telephone conference and discussed specific terms of a loan modification. SAC ¶ 28. On September 19, 2013, Moeller sent a letter denying Yolanda's request for mortgage assistance application, stating that "you have not sufficiently established 'hardship.'" SAC ¶ 30.

On September 25, 2013, Yolanda requested further information from Moeller as to the decision. SAC ¶ 32. Moeller sent a second letter dated October 14, 2013, and stated that Yolanda has the ability to pay current mortgage payments using cash reserves or assets. SAC ¶ 32. Counsel requested further information from Moeller on October 24, 2013, but did not receive a response. SAC ¶ 34. Between July 18 and October 14, 2013, Moeller represented to Yolanda in more than one writing, "I'm here for you…" SAC ¶ 62. Yolanda alleges that "the representation implied and led plaintiff to conclude and rely on the representation that Moeller and Krahn [another Wells Fargo representative] intended to make their best efforts to provide plaintiff with meaningful, accurate mortgage assistance." SAC ¶ 62. Yolanda alleges that her denial was a policy by Wells Fargo that "constitutes a pattern or practice of disparate impact discrimination on the basis of race (Asian) national origin (Filipino) age (71), sex (woman) and marital status (never married)." SAC ¶ 42.

1    Wells Fargo served Yolanda with foreclosure notices on April 1, 2014, and May 4,
2    2015. SAC ¶ 7. Yolanda "sought HUD's assistance through the Office of Fair Housing
3    and Equal Opportunity Region IX in January 2015, but HUD concluded it lacked
4    jurisdiction." SAC ¶ 7. For the past fourteen years until June 2014, Yolanda timely made
5    each loan contract payment. SAC ¶ 19. Yolanda was rejected for a HOPE refinancing
6    loan because she is delinquent. SAC ¶ 16.
7    On May 21, 2015, Yolanda alleges that a Wells Fargo attorney represented to
8    Yolanda without reasonable ground for believing the representation to be true that Wells
9    Fargo "discussed foreclosure prevention alternatives with you or your third party
10   representative." SAC ¶ 61.

### B. Procedural History

12   Yolanda filed this action in February 2014, alleging a variety of causes of actions
13   against Wells Fargo and its employees, stemming from Yolanda's rejected loan
14   modification applications and potential foreclosure of her home. Dkt. No. 1.
15   On April 14, 2014, Yolanda filed an ex parte motion for a temporary restraining
16   order seeking to enjoin Wells Fargo from foreclosing on the San Francisco property, after
17   receiving a "Notice of Intent to Foreclose" on April 1. Dkt. No. 6. On April 30, 2014, the
18   Court denied the ex parte motion for failure to show irreparable harm justifying the relief
19   sought in light of the status of the foreclosure proceedings, and ordered Yolanda to file a
20   regularly noticed motion for a preliminary injunction. *See* Dkt. No. 21. On May 2, 2014,
21   Wells Fargo filed a motion to dismiss all the causes of action in the complaint for failure to
22   state a claim. Dkt. No. 24. In lieu of opposing Wells Fargo's motion, Yolanda filed her
23   first amended complaint on May 12, 2014. Dkt. No. 27. On the same day, Yolanda also
24   filed a motion for preliminary injunction. Dkt. No. 28.
25   In the first amended complaint, Yolanda asserted ten causes of action against all
26   defendants. On May 29, 2014, Wells Fargo moved to dismiss all the causes of action in
27   the first amended complaint under Rule 12(b)(6) for failure to state a claim. Dkt. No. 40.
28   On the same day, the employee defendants moved to dismiss all causes of action under

Federal Rule of Civil Procedure 12(b)(2) on the basis that this Court lacks personal jurisdiction. Dkt. No. 42. The Court granted the employee defendants' motion to dismiss in its entirety. Dkt. No. 106. The Court also dismissed the complaint as to Wells Fargo on all claims, except the Equal Credit Opportunity Act claim, and granted Yolanda leave to amend. Dkt. No. 106. On January 12, 2015, Yolanda submitted a second amended complaint, which still named the employee defendants in the action. Dkt. No. 108. After the employee defendants moved to dismiss the complaint for lack of jurisdiction, Yolanda voluntarily dismissed them. Dkt. Nos. 110, 117. Defendant Wells Fargo moved to dismiss the second amended complaint. Dkt. No. 112. On January 29, 2015, Yolanda moved to file a supplemental complaint. Dkt. No. 115. On May 27, 2015, Yolanda moved for a preliminary injunction and to advance trial based on her ninth cause of action in the second amended complaint under the Homeowner's Bill of Rights. Dkt. No. 136.

The Court struck the second amended complaint because, at 96 pages, it was excessively lengthy and confusing. Dkt. No. 139. Yolanda moved for leave to file a renewed second amended complaint, which the Court permitted in part. Dkt. Nos. 140, 143. The Court did not permit Yolanda to add government defendants and the claims related to them. Dkt. No. 143. However, Yolanda's six claims against Wells Fargo were permitted.

Now, Wells Fargo moves to dismiss the second amended complaint. Dkt. No. 148. Prior to hearing the motion, the Court issued a tentative ruling, putting plaintiffs on notice that the Court intended to dismiss the complaint without leave to amend and advising plaintiffs to proffer additional facts. Dkt. No. 155. The Court held a hearing on October 7, 2015.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-

Case No.14-cv-00884-NC            5

1   38 (9th Cir. 1996).  The Court, however, need not accept as true "allegations that are
2   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*
3   *Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint need
4   not allege detailed factual allegations, it must contain sufficient factual matter, accepted as
5   true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,
6   550 U.S. 544, 570 (2007).  A claim is facially plausible when it "allows the court to draw
7   the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*
8   *v. Iqbal*, 556 U.S. 662, 678 (2009).
9         If a court grants a motion to dismiss, leave to amend should be granted unless the
10  pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203
11  F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

13        Yolanda sues for: (A) housing discrimination under the Fair Housing Act;
14  (B) breach of contract and the implied covenant; (C) negligent misrepresentation; and
15  (D) intentional fraud.  Yolanda additionally seeks declaratory relief, and both Yolanda and
16  Zosima request a preliminary and a permanent injunction.

### A.   Housing Discrimination

18        Disparate treatment under the Fair Housing Act requires a plaintiff to allege: (1) she
19  is a member of a protected class; (2) she applied for and met the qualifications for a loan;
20  (3) the lender refused to enter into such a transaction despite the plaintiff's qualifications;
21  and (4) around the same time, defendant approved such loans for other people with the
22  same qualifications.  *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997).  If
23  the plaintiff does not adequately allege that defendant approved loans for other people,
24  then the claim fails.  *Id.*
25        Yolanda alleges that she was denied mortgage assistance because she is Filipino,
26  while "similarly situated white borrowers received TPPs under more favorable terms."
27  SAC ¶ 54.  Yolanda does not allege that she applied for and met the qualifications of the
28  loan.  Yolanda also does not allege with any further particularity that Wells Fargo

Case No.14-cv-00884-NC          6

approved loans for similarly situated white borrowers. Even taking all factual allegations as true and drawing all inferences in favor of Yolanda, she has failed to plausibly state a claim for discrimination from which the Court could draw the reasonable inference that Wells Fargo is liable under the FHA.

In the caption, this claim is titled as "Fair Housing and ECOA," and at the hearing, Yolanda's counsel represented that this claim encompassed an ECOA claim. However, nothing within the claim addresses ECOA, or points to a specific claim under ECOA. The Court previously considered Yolanda's ECOA claim as alleged in the first amended complaint and found that it was sufficiently pled. The claim now presented in the second amended complaint is different and deficient. Thus, this claim is DISMISSED.

### B. Breach of Contract and the Implied Covenant

Wells Fargo argues that Yolanda's claims for breach of contract and breach of the implied covenant fail to state a claim because: (1) Wells Fargo had no obligation under California law to offer a loan modification; (2) Wells Fargo had no obligation under HAMP to offer a loan modification; and (3) Yolanda failed to allege facts showing that she entered into a modification agreement with Wells Fargo, what its terms were, how Wells Fargo breached them, and what damages resulted. These are the same arguments Wells Fargo made in its first motion to dismiss, which the Court granted.

The standard elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom. *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999 (2010). "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Levy v. JP Morgan Chase*, No. 10-cv-01493, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010).

The Court previously found that the July 18, 2013, letter does not qualify as an

Case No.14-cv-00884-NC            7

offer, creating a contract, nor could Wells Fargo's oral representations or assurances qualify as an offer creating a contract. Dkt. No. 106. The Court finds that no additional facts have been alleged in this complaint, and thus, this claim is DISMISSED.

### C. Negligent Misrepresentation

Under California law, to state a claim for negligent misrepresentation, the plaintiff must allege: (1) a misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the misrepresentation; (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and (5) resulting damage. *Hosseini v. Wells Fargo Bank, N.A.*, No. 13-cv-02066 DMR, 2013 WL 4279632, at *7 (N.D. Cal. Aug. 9, 2013). In addition, Yolanda must allege the existence of a duty of care owed to her by Wells Fargo. *Ditto v. McCurdy*, 510 F.3d 1070, 1078 (9th Cir. 2007) (finding that negligent misrepresentation requires the same elements as negligence, including a duty of care).

As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citation omitted). The Court previously determined that "[t]o the extent Yolanda premises her fraud-based claims on the representations made by Wells Fargo in the July 18, 2013, letter and the telephone call between Yolanda's counsel and Moeller on August 7, 2013, these communications do not show that Wells Fargo exceeded its role as money lender and thus assumed a duty of care." Dkt. No. 106. The Court finds that no additional facts have been pled with sufficient particularity to sustain a claim for negligent misrepresentation, and DISMISSES this claim.

### D. Intentional Fraud

To plead fraud or mistake under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under California law,

Case No.14-cv-00884-NC              8

the "indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citations omitted).

Yolanda argues that Wells Fargo agents had knowledge that Wells Fargo had a policy of denying loan modifications, and thus, intentionally misrepresented that they would consider Yolanda's application. Even taken as true, Yolanda fails to plead her justifiable reliance on Wells Fargo's misrepresentations, and her resulting damages. *See Casault v. Fed. Nat. Mortgage Ass'n*, 915 F. Supp. 2d 1113, 1122 (C.D. Cal. 2012) (finding that plaintiff's reliance on loan modification offers was not reasonable, and thus plaintiff did not adequately state a claim for fraud under California law). Thus, this claim is DISMISSED.

### E. Declaratory Relief

Yolanda's first cause of action is for declaratory relief. Dkt. No. 147 at 22. However, declaratory relief requires an actual controversy between the parties, and is a form of relief, not a cause of action. *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) "The appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167–68 (9th Cir. 1998). "Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008).

Here, the Court has determined that Yolanda has failed to state a claim for relief on her underlying causes of action. Therefore, no claims in the case exist independent of any request for declaratory relief, so this "claim" is also DISMISSED.

### F. Preliminary and Permanent Injunction

Similarly, injunctive relief is a remedy, not a cause of action. *See Castellanos v. Countrywide Bank NA*, No. 15-cv-00896 BLF, 2015 WL 3988862, at *4 (N.D. Cal. June 30, 2015); *McDowell v. Watson*, 59 Cal.App.4th 1155, 1159 (1997). Here, no causes of action remain, and therefore, injunctive relief also fails. Additionally, a plaintiff seeking injunctive relief must establish that she is likely to succeed on the merits, which here, the Mulatos cannot do. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This "claim" is also DISMISSED.

## IV. CONCLUSION

Although leave to amend the complaint is generally preferred, "futile amendments should not be permitted." *Klamath-Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bur.*, 701 F.2d 1276, 1292 (9th Cir. 1983) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Court dismissed Yolanda's first amended complaint, and in that order, provided a detailed explanation of the appropriate law and why the facts alleged in the complaint were not sufficient. After reviewing the second amended complaint and hearing the Mulatos' oral arguments, the Court concludes that the Mulatos have no further facts in their possession that would cure the deficiencies outlined in this order. This case is about the Mulatos' frustration that Wells Fargo denied Yolanda's application for a loan modification. Taken as true, the facts of this case do not plausibly give rise to the conclusion that Wells Fargo is in violation of the common or statutory law alleged. Therefore, the motion to dismiss is GRANTED without leave to amend.

**IT IS SO ORDERED.**

Dated: October 28, 2015

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No.14-cv-00884-NC        10